AO 91 (Rev. 11/11) Criminal Complaint

United States District Court
Southern District of Texas
FILED

# UNITED STATES DISTRICT COURT
for the
SOUTHERN DISTRICT OF TEXAS

OCT 13 2014

David J. Bradley, Clerk

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. M-14-1988-M |
| SEE ATTACHMENT | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __10/12/2014__ in the county of __Hidalgo__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC 841 (a)(1)<br>21 USC 846 | Conspiracy to Possess with Intent to Distribute marijuana, approximately 413.74 kilograms, a schedule I controlled substance. |

This criminal complaint is based on these facts:

On October 12, 2014, at approximately 6:00 AM, United States Border Patrol (USBP) Agents were conducting line watch operations near San Juan, Texas. Using infrared equipment, Border Patrol Agents observed a group of subjects walking into the brush in an area north of the levee, east of San Juan Road, and south of Military Highway 281. USBP Agents in the immediate area were instructed, via service radio, to establish a perimeter around the brush area that the subjects were observed entering.

☑ Continued on the attached sheet.

*Complainant's signature*
R. James Carter, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __10/13/2014__  4:17 pm

*Judge's signature*

City and state: __McAllen, TX__    Hon. Peter Ormsby, US Magistrate Judge
*Printed name and title*

## ATTACHMENT

The USBP maintained a visual on the numerous subjects in the area through infrared devices and agents that were in the area that could observe activities that appeared to be suspicious. The suspicious activities consisted of subjects exiting the brush, looking around, and darting back into the brush whenever a vehicle approached the area.

When USBP agents were sufficiently in position and the order to approach the subjects in the brush was initiated, the subjects fled on foot in different directions. Twelve individuals, all of which are citizens of Mexico, were apprehended by the USBP. Four of the individuals apprehended were juveniles and were repatriated to Mexico on October 12, 2014.

USBP Agents returned to the brush area where the group of subjects initially ran from and discovered sixteen bundles of what appeared to be marijuana. The bundles were located approximately thirty to forty yards south of Military Highway 281, and approximately twenty yards west of the east edge of the brush area where the subjects were observed running south from. The USBP secured the bundles and transported them to the Weslaco Border Patrol Station for processing. The bundles had a combined weight of 413.74 kilograms. The USBP cut open a bundle which revealed a green leafy substance that emitted an odor of marijuana. The USBP tested the substance inside the bundles with a Duquenois-Levine Reagent testing kit and the results were positive for the characteristics of marijuana.

Adult aliens apprehended:

-01 Manuel Umberto BANDA-Chavira, DOB: 8/3/1992, COB: Mexico

-02 Fernando HERNANDEZ-Tejada, DOB: 12/23/92, COB: Mexico

-03 Andres CORONADO, DOB: 6/3/1996, COB: Mexico

-04 Francisco Javier REYNA-Hernandez, DOB: 2/18/1996, COB: Mexico

-05 Jorge Fabian CEPEDA-Hernandez, DOB: 5/9/1995, COB: Mexico

-06 Juan Carlos MARTINEZ-Ramirez, DOB: 3/16/1993, COB: Mexico

-07 Jose Alejandro LOPEZ-Lara, DOB: 9/30/1995, COB: Mexico

-08 Antonio RIVERA-Fernandez, DOB: 02/11/1996, COB: Mexico

At approximately 8:30 a.m. the USBP contacted DEA S/A R. James Carter via telephone and provided information regarding the arrest of twelve subjects. S/A Carter and S/A Norris Macon arrived at the Weslaco USBP Station at approximately 10:00 AM.

A digital recording of all interviews that were conducted or attempted was obtained by DEA Special Agents. Digital photographs of each subject were also acquired by DEA Special agents at the times of their respective interviews.

At approximately 10:41 AM, Manuel BANDA was informed of his rights in the Spanish language by USBP Agent Eduardo Longoria in the presence of S/A Carter and S/A Macon. BANDA stated that he did not wish to make any statements due to the fear of being deported to Mexico and what would happen if he talked. The interview was terminated. BANDA had strap marks across each shoulder that was consistent with those made by ropes while carrying bundles of marijuana. Photographs of BANDA'S strap marks were obtained.

At approximately 11:34 AM, Francisco REYNA was advised of his rights by S/A Carter in the English language, as witnessed by S/A Macon. REYNA signed the waiver form and agreed to make a statement without the benefit of counsel. REYNA confessed to illegally bringing marijuana into the United States. REYNA stated that he was forced by the Gulf Cartel that stated that would kill REYNA'S sisters that reside in Miguel Aleman and Matamoros, Mexico. REYNA stated that he was forced and gun point to smuggle the marijuana.

At approximately 12:13 PM, Antonio RIVERA was advised of his rights by USBP Agent Eduardo Longoria in the Spanish language. RIVERA signed the waiver form and agreed to provide a statement without the benefit of counsel. RIVERA stated that he agreed to carry bundles of marijuana for a coyote. The coyote promised RIVERA that if RIVERA would carry the marijuana and pay the coyote an additional $1,000 in US currency, the coyote would make sure RIVERA made it to Wyoming which was RIVERA'S final destination.

RIVERA stated that he witnessed other members in the group talking to Gulf Cartel members when the drug smuggling operation began. RIVERA stated that he never saw any firearms or any member of the group that was apprehended by the USBP being forced to do anything.

At approximately 1:26 PM, Jorge ZEPEDA was advised of his rights by USBP Agent Eduardo Longoria in the Spanish language, as witnessed by S/A Carter and Macon. ZEPEDA advised that he did not want to make a statement without the presence of counsel and the interview was terminated. ZEPEDA bore evidence of strap marks across his right shoulder which was consistent with rope burns while carrying bundles of marijuana. Photographs of the strap marks were obtained.

At approximately 2:00 PM, Juan MARTINEZ was advised of his rights by DEA S/A Joshua Garza and in the presence of S/A Carter and S/A Macon. MARTINEZ signed the waiver form and agreed to give a statement without the presence of counsel. MARTINEZ admitted that he participated in the smuggling of marijuana, but added that he was forced to do it by the Gulf Cartel who informed MARTINEZ that the Gulf Cartel would harm his family if MARTINEZ didn't cooperate. MARTINEZ stated that every subject that was apprehended by the USBP participated in the smuggling of marijuana.

At approximately 1:28 PM, Andres CORONADO was advised of his rights by S/A Tony Santos, as witnessed by S/A Josh Hansen. CORONADO agreed to provide a statement without the presence of an

attorney. CORONADO admitted to entering the United States illegally, but denied carrying any bundles. CORONADO stated that he only encountered the group that got arrested as they were running south from the USBP. No visible strap marks were observed on CORONADO'S shoulders.

S/A Hansen took a digital photograph of CORONADO and then presented the photo of CORONADO to Francisco REYNA. REYNA stated that CORONADO was in fact as culpable as everyone else in the entire group. REYNA added that he and CORONADO are well acquainted with each other in Mexico. REYNA stated that he personally observed CORONADO carrying bundles.

At approximately 2:03 PM, S/A Tony Santos advised Jose LOPEZ of his rights, as witnessed by S/A Hansen. LOPEZ signed the waiver form and agreed to provide a statement without the presence of counsel. LOPEZ admitted to entering the United States illegally. He added that he just happened upon all the people that were arrested when the USBP converged on them and the group started running. LOPEZ denied carrying any bundles.

At approximately 1:45 PM, Fernando HERNANDEZ was advised of his rights by S/A Joshua Garza, as witnessed by S/A Derrick Crist. HERNANDEZ opted to not provide a statement without the presence of counsel and the interview was terminated.